# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT HOFFMAN,<br>CDCR #F-39330,<br><br>                                Plaintiff,<br><br>                vs.<br><br>D. KHATRI; C. COOK; S. AYMAR;<br>N. TETTEH; C. NAVAMANI;<br>C. LAI; S. KO,<br><br>                              Defendants. | Civil No.   09-0172 DMS (RBB)<br><br>**ORDER GRANTING DEFENDANTS'<br>TETTEH AND NAVAMANI'S<br>MOTIONS TO DISMISS FOR<br>FAILING TO STATE A<br>CLAIM PURSUANT<br>TO FED.R.CIV.P. 12(b)(6)**<br><br>**[Doc. Nos. 26, 27]** |

## I.

### PROCEDURAL BACKGROUND

Garrett Hoffman ("Plaintiff"), a prisoner currently incarcerated at Centinela State Prison ("CEN") in Imperial, California, proceeding pro se and *in forma pauperis,* filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 27, 2009. Plaintiff alleges Defendants violated his right to be free of cruel and unusual punishment by failing to provide him adequate medical care. (Compl. at 2-4, 9.) Plaintiff seeks $500,000 in general and punitive damages. (Id. at 16.)

On July 22, 2009 and December 9, 2009, the Court granted Motions to Dismiss filed on behalf of Defendants Khatri, Cook, Ko and Lai pursuant to FED.R.CIV.P. 12(b)(6). The remaining Defendants, N. Tetteh and C. Navamani have since filed their own Motions to

1  Dismiss pursuant to FED.R.CIV.P. 12(b)(6) [Doc. Nos. 26, 27]. Because Defendant Tetteh's
2  Motion seeks to limit Plaintiff's claims based on the specificity of his CDC 602 administrative
3  grievance pursuant to 42 U.S.C. § 1997e(a), the Court provided Plaintiff with notice and an
4  opportunity to include in his opposition evidence of exhaustion pursuant to 42 U.S.C. § 1997e(a)
5  [Doc. No. 28]. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Plaintiff has filed
6  no opposition, however. Consequently, neither Defendant Tetteh nor Navamani filed a reply.
7  The Court has determined that Defendants' Motions are suitable for disposition upon the
8  papers without oral argument and that no Report and Recommendation from Magistrate Judge
9  Ruben B. Brooks is necessary. *See* S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

## II.

### PLAINTIFF'S FACTUAL ALLEGATIONS

12  On August 5, 2007, Plaintiff was incarcerated at Centinela State Prison ("CEN").
13  (*See* Compl. at 1.) While Plaintiff was working in the Facility "D" kitchen and carrying ten
14  sheet pans, he slipped on a puddle of water on the floor, fell, and injured his back. (*Id.* at 4; *see*
15  *also* Pl.'s Ex. B [Doc. No. 1-1] at 17-18.) A prison Medical Technical Assistant ("MTA")
16  placed Plaintiff on a backboard to transport him to the Central Health; however, Plaintiff claims
17  he fell off the backboard twice because he was not properly strapped down by the MTA.
18  (Compl. at 4.)

19  At Central Health, Plaintiff was examined in the Treatment Triage Area and claims he
20  was prescribed aurazine and ibuprofen for his "excruciating pain," but he claims neither had any
21  effect. (*Id.*) The discharge instructions signed by both Plaintiff and Defendant Tetteh dated
22  August 5, 2007, however, indicate Dr. Tetteh specifically prescribed baclofen, motrin and ultram
23  on that day. (*See* Pl.'s Ex. B at 16.) In his Physician's Orders (CDC Form 7221) also dated
24  August 5, 2007, Dr. Tetteh further ordered an x-ray of Plaintiff's spine and relieved him from
25  kitchen duty for 30 days. (Pl.'s Ex. B at 21.)

26  On August 7, 2007, Plaintiff appeared for a follow-up examination, complained to Dr.
27  Ko of continued lower lumbar pain, and reported he "never got his meds delivered to him." (*Id.*
28  at 23 "Interdisciplinary Progress Notes" CDC Form 7230.) Dr. Ko checked with the pharmacy,

confirmed Plaintiff's pain medication would be delivered that day, gave Plaintiff a shot of Toradol and released him back to custody with instructions to "rest with minimal activities" and follow-up by procuring his medication on the yard med-line. (*Id.* at 24.)

On August 13, 2007, Plaintiff filled out a Health Care Services Request Form ("CDCR 7362"), in which he requested to see a doctor, complained of "extreme pain,' and reported his medication was "not working." (*Id.* at 26.) Plaintiff also claimed to have not received a "copy of [his] work lay-in" or the x-ray Dr. Tetteh ordered on August 5, 2007. (*Id.*) On August 15, 2007, Dr. Tetteh issued a CDCR 7393 Notification of Diagnostic Test Results, informing Plaintiff he was being scheduled for a follow-up medical appointment regarding his x-ray. (*Id.* at 29.) On August 17, 2007, Correctional Sergeant Villeneuve noted Plaintiff's assignment change and on August 23, 2007, Plaintiff's Outpatient Interdisciplinary Progress Notes indicate he was again examined in Central Health. At that time, Plaintiff's Medical Lay-In Order was extended for two additional days, he was prescribed additional motrin and baclofen, and authorized for a new mattress. (*Id.* at 31-34.) Plaintiff submitted CDCR 7362s again on September 2, 2007 and September 7, 2007–both times requesting follow-ups with a doctor, reporting severe pain, ineffective medication, need for a back brace and trouble sleeping. (*Id.* at 35-36.)

On September 10, 2007, Plaintiff was examined by the "yard MD," referred for a 30-day specialty physical therapy consult, and advised to continue gentle stretching. Plaintiff was further prescribed naprosyn. (*Id.* at 37-42.) Three days later on September 13, 2007, and again on September 26, 2007, Plaintiff submitted CDC Form 7362s requesting to see a doctor, complaining of severe back pain and ineffective medication. (*Id.* at 43, 44.)

On October 10, 2007, Plaintiff was examined by Dr. Aymar, who reviewed his x-ray, noted Plaintiff's continued prescriptions for naprosyn and baclofen, ordered another for Tylenol #3, continued physical therapy and authorized a 2-month follow-up regarding Plaintiff's lower back pain. (*Id.* at 45, 48.) Plaintiff's Interdisciplinary Progress Notes (CDC Form 7230) thereafter show Plaintiff reported to the medical clinic every day from October 10, 2007 through November 4, 2007, where he continued to report lower back pain and where he received doses

1  of Tylenol #3 three times each day. (*Id.* at 49-55, 61.) On November 1, 2007, Plaintiff again
2  requested to see a doctor. (*Id.* at 56.)

3         Plaintiff was examined again by Dr. Ko on November 5, 2007. (*Id.* at 59.) Dr. Ko
4  injected Plaintiff with toradol, prescribed ibuprofen and motrin and approved Plaintiff for
5  crutches for 2 weeks. (*Id.* at 59-60, 62.) Plaintiff continued to report to the clinic on November
6  6 through 8, 2007, where he received Tylenol #3 twice a day. On November 6, 2007, however,
7  Plaintiff's Interdisciplinary Progress Notes indicate he returned the crutches prescribed by Dr.
8  Ko because he found it "hard to move around." (*Id.* at 63.) On November 8, 2007, Plaintiff was
9  examined by Dr. Aymar, where he reported feeling "looser" and admitted returning the crutches
10 because he "didn't need" them. (*Id.* at 66.) Plaintiff was advised to "continue gentle stretching,"
11 and engaged in an "extensive discuss[ion] re: chronic nature of his LBP (lower back pain)." (*Id.*)
12 Following this consult, Dr. Aymar discontinued Plaintiff's prescription for ibuprofen, and
13 authorized "no RF (refill) of Tylenol #3 as not indicated." (*Id.*) Dr. Aymar did, however,
14 prescribe naproxyn and 650 mg of Tylenol, as well as physical therapy. (*Id.* at 65.)

15        On November 9, 2007, Plaintiff requested a cane "because it was hard to use crutches."
16 (*Id.* at 67, 69.) Plaintiff's medical records further indicate he was prescribed baclofen, toradol,
17 ibuprofen, naproxen, acetominophen, and motrin for pain from November 5, 2007 through
18 January 24, 2008 by Drs. Tetteh, Ko and Aymar. (*Id.* at 77.)

19        On November 16, 2007, Plaintiff filed CDC 602 Inmate/Parolee Appeal Log No. CEN-
20 07-01515, "formally request[ing] a cane, to be seen by a back specialist, [and] medication
21 consistently given to help the severe and excruciating pain in his lower back." (Pl.'s Ex. A at
22 2-4.) On December 12, 2007, C. Cook, a CEN Health Care Appeal Coordinator partially granted
23 Plaintiff's appeal. (Compl. at 5; Pl.'s Ex. A at 2.) Cook "partially granted" Plaintiff's grievance
24 insofar as he had been examined by Dr. Aymar on December 6, 2007, and his prescription for
25 tylenol and naprosyn dated November 8, 2007 remained valid for three months. Cook further
26 noted that Plaintiff had refused a previously physical therapy appointment because it conflicted
27 with a family visit, but noted that Dr. Aymar had since "reordered" a physical therapy consult.
28 (*Id.*) Plaintiff's request for a cane and referral to a back specialist was denied, however, because

1  "there [wa]s no MD order for a cane or an orthopedic referral." (*Id.*)

2  Plaintiff appealed this decision to the first formal level, repeating his request for a cane, back specialist and pain medication. On February 5, 2008, his appeal was again partially granted by C. Cook, CEN's Health Care Appeals Coordinator, and Dr. Khatri, CEN's Chief Physician. (Compl. at 5-6; Pl.'s Ex. A at 8.) Again, Plaintiff's appeal was denied insofar as "there [wa]s no physician order for [Plaintiff] to possess a cane" and "no referral to a back specialist." (Pl.'s Ex. A at 8.) Cook and Khatri did review Plaintiff's medication profile, noting that "Ibuprofen, Ultram, Baclofen, Acetamin/Codeine, Toradol and Naproxen ha[d] all been prescribed and dispensed on an ongoing basis to use for pain control since 7/25/07." (*Id.*) Plaintiff's first level review also noted Plaintiff "received a face-to-face nurse triage on 1/18/08 with R.N. Manaig to address [his] medical concerns" and that Plaintiff had been scheduled for a "follow-up MD line" in early March where his "attending clinician w[ould] determine if further treatment is indicated." Finally, Cook and Khatri noted Plaintiff "continued to receive physical therapy services and [would] not be permitted to dictate [his] own course of treatment." (*Id.*)

15  On February 9, 2008, Plaintiff appealed to the Second Level of administrative review, again requesting a cane, referral to a back specialist and repeating complaints that his pain medication schedule was inconsistent. (Compl. at 7; Pl.'s Ex. A at 3.) On April 21, 2008, N. Barreras, the Chief Medical Officer/Health Care Manager at CEN reviewed Plaintiff's appeal and, once again, partially granted Plaintiff's requests. (Compl. at 7; P.'s Ex. A at 7.) Specifically, Dr. Barreras noted Plaintiff was examined by Defendant Dr. Navamani on February 26, 2008, who ordered a "routine orthopedic consultation." (*Id.*; *see also* Pl.'s Ex. C at 79 "CDC 7243 Physician Request for Services.") Plaintiff was advised that "routine services are scheduled chronologically and that [he] w[ould] be ducated accordingly. Any treatment recommendations from th[e] outside contracted specialist will be reviewed and considered by CDCR staff according to medical services treatment criteria." (Pl.'s Ex. A at 7.) Dr. Barreras further noted that while "Baclofen was ordered on 3/13/08 and Robaxin was ordered on 3/27/08 to use as needed for pain relief[,] [t]here continue[d] to be no medical recommendation for a cane at this time." (*Id.*)

On March 27, 2008, CEN's Medical Authorization Review Committee approved Plaintiff for an orthopedic consult. (Compl. at 8; Pl.'s Ex. A at 5.) On April 24, 2008, Plaintiff was examined by Dr. Lai in the Central Health orthopedic clinic. (Compl. at 8; *see also* Pl.'s Ex. A at 5, 10.) Dr. Lai recommended a Magnetic Resonance Imaging ("MRI"). (*Id.*) On May 8, 2008, Plaintiff attended a follow-up visit with his primary care provider, who submitted a referral for the MRI. (*Id..* at 8, Pl.'s Ex. A at 5.) Plaintiff was examined again by an unidentified "primary care provider" on May 23, 2008 and June 9, 2008, but claims to have been "deprived of Dr. Lai's recommended MRI." (Compl. at 8.)

On August 25, 2008, a Director's Level Appeal Decision was issued denying Plaintiff's administrative grievance. (*Id.*; *see also* Pl.'s Ex. A at 5-6.) While the Director's Level Decision indicates Dr. Lai's MRI referral was, in fact, still "pending approval" at the time, it further found "it [wa]s evident that [Plaintiff] ha[d] received and continue[d] to receive health care treatment services and treatment in accordance with regulation." (Pl.'s Ex. A at 5.) Plaintiff was further advised that "licensed professional medical staff ha[d] evaluated [him] and determined the best course of treatment," and that, pursuant to CAL. CODE REGS., tit. 15 § 3354(a), as an inmate, he would not be permitted to dictate his own course of medical care. (*Id.*).

Still dissatisfied, Plaintiff filed his § 1983 complaint in this Court, in which he continues to disagree as to the sufficiency of his care, and in which he alleges Defendants Aymar, Navamani, Ko and Tetteh, his primary care physicians since August 5, 2007, "have done nothing which would correct the severe excruciating lower back pain" he continues to suffer. (Compl. at 6.) As a result, Plaintiff concludes "all Defendants" have "delayed and deprived" him of "corrective care [for his] sufficiently serious condition," causing him "needless suffering" in violation of the Eighth Amendment. (Compl. at 8-12.) He seeks $500,000 in general and punitive damages. (*Id.* at 16.)

### III.

### DEFENDANTS' MOTION TO DISMISS

**A.     Defendants' Arguments**

Defendant Tetteh first argues that the court is limited in its consideration of Plaintiff's Eighth Amendment claims because only the "issues" involving the availability of a cane, referral

to a back specialist and the administration of medication were "mentioned" in the CDC 602 administrative grievance which Plaintiff exhausted to the Director's Level of Review. (*See* Def. Tetteh's Mem. of P&As in Supp. of Mot. to Dismiss (hereafter "Tetteh Mot.") [Doc. No. 26-1] at 7-11.) Both Defendants Tetteh and Navamani further argue Plaintiff has failed to allege facts sufficient to show that they acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. (*Id.* at 12-16; Def. Navamani's Mem. of P&As in Supp. of Mot. to Dismiss (hereafter "Navamani Mot.")[Doc. No. 27-1] at 10-16.)

### B.  FED.R.CIV.P. 12(b)(6) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), and at any exhibits which are attached. *See* FED.R.CIV.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. \_\_, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a

factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

**C.    Defendant Tetteh's Exhaustion Argument**

Defendant Tetteh first seeks dismissal of all claims which do not involve his request for a cane, referral to a back specialist, or the administration of prescribed medication on grounds that only these specific requests were mentioned in the CDC 602 appeal Plaintiff exhausted to the Director's Level of Review as is required by 42 U.S.C. § 1997e(a).

Section 1997e(a) does not impose a pleading requirement, but rather, the failure to exhaust is an affirmative defense which Defendant Tetteh has the burden of raising and proving. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Enacted as part of the Prison Litigation Reform Act ("PLRA"), section 1997e(a) requires a prisoner exhaust all administrative remedies "as are available" before he files a civil action related to any condition of his confinement. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). It is the prison's own grievance process, however, and not the PLRA, which determines what steps a prisoner must take, and how specific his grievance must be in order to properly exhaust his claims under 42

U.S.C. § 1997e(a). *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Jones v. Bock*, 549 U.S. 199, 218 (2007). In California, prisoners "[t]hree levels of formal review are provided, and a prisoner exhausts the grievance process when he completes the third level." *Harvey v. Jordan*, 605 F.3d 681, 683-84 (9th Cir. 2010) (citing CAL. CODE REGS., tit. 15 § 3084.1(a)); *see also id.* § 3084.5 ("Levels of Appeal Review and Disposition").

"A grievance ... need not contain every fact necessary to prove each element of an eventual legal claim." *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009). In fact, "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Id.* (*citing Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). "The primary purpose of a grievance is to notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* Instead, it is the institution's appeals process itself which defines the level of detail necessary for a prisoner to present his grievances. *Jones*, 549 U.S. at 218; *Griffin*, 557 F.3d at 1120.

In California, prisoners are required only to "use a CDC Form 602 ... to describe the problem and the action requested." CAL. CODE REGS., tit. 15 § 3084.2(a). Thus, so long as Plaintiff's CDC 602 Form "provide[d] enough information ... to allow prison officials to take appropriate measures," "notif[ied] the prison of [his] problem," and the "nature of the wrong for which redress is sought," the exhaustion statute is satisfied. *Griffin*, 557 F.3d at 1120-21 (internal citations omitted).

Here, Plaintiff's Complaint involves only one constitutional claim: whether Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Compl. at 4, 9.) Plaintiff asserts only one cause of action against various prison officials–all of them in some way involved in providing him medical care after he fell and injured his lower back on August 5, 2007. And while, in section "B" of his CDC 602 entitled "Action Requested," Plaintiff does specifically "request[] a cane, to be seen by a back specialist, [and that] medication [be] consistently given to help the severe and excruciating pain in his lower back," (Pl.'s Ex. A at 2), Section "A" of the CDC 602 Form, where he was asked to "describe the problem," Plaintiff's "additional attached sheet," which is permitted by Cal. Code

1  Regs., tit. 15 § 3084.2(a)(1) to further permit the prisoner to "describe the problem and action
2  requested," as well as Sections D, F, and H–each requiring him to "explain reasons" for
3  requesting Formal, Second and Third Level Review, make it abundantly clear that Plaintiff's
4  "problem" was his continued lower back pain, a perceived " total disregard for his needs," and
5  his belief that "medical staff" were subjecting him to "cruel and unusual prison conditions" and
6  "ongoing inadequate medical care." (*Id.* at 3.) This is more than sufficient information "to
7  allow prison officials to take appropriate measures," and to "notify the prison of [his] problem,"
8  and the "nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120-21.

9  Accordingly, the Court declines to limit its review of Plaintiff's Eighth Amendment
10 claims to only his requests for a cane, orthopedic consult and medication administration pursuant
11 to 42 U.S.C. § 1997e(a), and instead will consider whether all Plaintiff's allegations are
12 sufficient to state a claim against Defendants Tetteh and Navamani.

13 **D.  Inadequate Medical Care Claims**

14 Both Defendants Tetteh and Navamani further seek dismissal pursuant to FED.R.CIV.P.
15 12(b)(6), however, on grounds that Plaintiff has failed to sufficiently plead the deliberate
16 indifference required to support an Eighth Amendment violation as to either of them. (*See*
17 Tetteh Mot. at 12-16; Navamani Mot. at 10-15.) For the reasons discussed below, the Court
18 agrees.

19 **1.  Eleventh Amendment**

20 Defendant Navamani first seeks dismissal, in part, on grounds that Plaintiff's official
21 capacity claims are barred by the Eleventh Amendment. (Navamani Mot. at 12, 15-16.)

22 While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors
23 sued in their official capacities, *Will v. Michigan Dep't of State Police*, 4[91] U.S. 58, 66 (1989),
24 it does not bar damage actions against state officials sued in their personal or individual
25 capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th
26 Cir. 1992). When a state actor is alleged to have violated both federal and state law and is sued
27 for damages under section 1983 in his individual or personal capacity, there is no Eleventh
28 Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of*

*Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

Plaintiff brings this § 1983 suit against Defendant Navamani in both his individual and official capacities. (*See* Compl. at 2.) The Supreme Court has made it clear that a plaintiff can establish personal liability in a section 1983 action simply by showing that each official acted under color of state law in deprivation of a federal right. *Hafer*, 502 U.S. at 25.

Consequently, the Court GRANTS Defendant Navamani's Motion to Dismiss on Eleventh Amendment ground–but only to the extent that Plaintiff seeks damages against him in his official capacity. The Eleventh Amendment imposes no bar to Plaintiff's damages action against either Dr. Navamani or Dr. Tetteh for acts or omissions alleged to have been taken in their personal capacities. *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

### 2.     **Eighth Amendment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511

U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *Id.* at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

Here, neither Defendant challenges the objective basis for Plaintiff's Eighth Amendment claim, *i.e,* that he suffers from a "serious medical need." (Compl. at 8.) Instead, both argue that Plaintiff's allegations do not show they acted with deliberate indifference to that serious need.

In order to show deliberate indifference, Plaintiff must allege that both Drs. Tetteh and Navamani purposely ignored or consciously failed to respond to the gravity of his medical need. *McGuckin*, 974 F.2d at 1060; *Toguchi*, 391 F.3d at 1057. As for Dr. Tetteh, however, Plaintiff alleges only that he examined Plaintiff on August 5, 2007, the same day he was injured, and prescribed baclofen, motrin and ultram for pain. (*See* Compl. at 4; Pl.'s Ex. B at 16.) Plaintiff's own exhibits further show that it was Dr. Tetteh who: 1) ordered an x-ray of Plaintiff's spine and relieved him from kitchen duty for 30 days; 2) notified Plaintiff on August 15, 2007 that he was being scheduled for a follow-up medical appointment regarding his radiological results; 3) requested Plaintiff be approved for routine physical therapy noting "degenerative arthritis of [his] l[ower]-spine with constant pain not relieved by brace / [illegible] / baclofen"; and 4) prescribed, along with Drs. Ko and Aymar, baclofen, toradol, ibuprofen, naproxen, acetominophen, and motrin for Plaintiff's repeated complaints of pain continually from November 5, 2007 through January 24, 2008. (*See* Pl.'s Ex. B at 19, 21, 29, 38; Ex. C at 77.)

Plaintiff makes no further allegations against Dr. Tetteh, and most importantly, does not allege any facts to suggest that Dr. Tetteh was responsible for denying his request for a cane, more consistently or effectively managing the distribution of the pain medication he himself prescribed, deliberately indifferent to Plaintiff's request for an orthopedic consult or the cause for any delay in receiving the MRI Dr. Lai ultimately recommended on April 24, 2008.

*See Iqbal*, 129 S. Ct at 1948 ("[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Instead, Plaintiff's allegation against Tetteh amount to no more than a disagreement between Plaintiff and his doctors about the most effective course of treating his back pain. Such a disagreement does not rise to the level of deliberate indifference and thus, does not violate the Eighth Amendment. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff's allegations against Dr. Navamani are even more sparse. Specifically, Plaintiff alleges only that it was Dr. Navamani who ordered a "routine orthopedic consultation" on February 26, 2008. (*See* Compl. at 7; Pl.'s Ex. C at 79 "CDC 7243 Physician Request for Services.") "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. To the extent that Plaintiff suggests Dr. Navamani should have ensured that Plaintiff receive an orthopedic consult sooner than April 24, 2008–when Plaintiff was examined by Dr. Lai in the orthopedic clinic–or should have prescribed some unspecified alternate courses of treatment, his claims sound in negligence and also do not rise to the level of cruel and unusual punishment. *Estelle*, 429 U.S. at 106.

Even when medical officials disagree as to the proper course of treatment, as may have been the case with respect to the final authorization of Plaintiff's MRI, deliberate indifference is manifest only shown when the prisoner pleads facts sufficient to show "the course of treatment the doctors chose was medically unacceptable under the circumstances," and that "they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson,* 90 F.3d at 332; *see also Estelle*, 429 U.S. at 107 ("A medical decision not to order an x-ray, or like measures," is a "classic example of a matter for medical judgment" which by itself "does not represent cruel and unusual punishment."). *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (Eighth Amendment is not violated merely because a prisoner's treatment "was not as prompt or efficient as a free citizen might hope to receive.").

In sum, in order to state an Eighth Amendment deliberate indifference claim against both Drs. Navamani and Tetteh Plaintiff must do more than simply conclude they were "wanton." (Compl. at 2-3.) *Iqbal*, 129 S. Ct. at 1949. Instead, Plaintiff must support this conclusion with

well-pleaded facts which plausibly suggest deliberate indifference on both their parts. *Id.* at 1949-50; *Moss*, 572 F.3d at 969. This he has failed to do.

Accordingly, Defendant Tetteh and Navamani's Motions to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6) are **GRANTED**.

## IV.
### CONCLUSION AND ORDER

Based on the foregoing, the Court hereby **GRANTS** Defendant Tetteh and Defendant Navamani's Motions to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6) [Doc. Nos. 26, 27]. Because the Court has previously provided Plaintiff with leave to amend to no avail, and Plaintiff has elected to oppose none of the Motions to Dismiss filed by any Defendant in this case, it now finds further opportunity to amend would be futile. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 339 (9th Cir. 1996).

The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: August 3, 2010

_____
HON. DANA M. SABRAW
United States District Judge